1  Robert N. Phillips (SBN 120970)
   Lisa S. Buccino (SBN 205266)
2  HOWREY LLP
   525 Market Street, Suite 3600
3  San Francisco, CA  94105
   T:  (415) 848-4900
4  F:  (415) 848-4999

5  Attorneys for Defendants
   THE GAP, INC. and OLD NAVY, LLC

6

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  PROJECT E, INC., a corporation,          Case No. C 07-2280 (CRB)

12                 Plaintiff,                 **DEFENDANTS' NOTICE OF MOTION
                                              AND MOTION FOR PARTIAL
13                                            SUMMARY JUDGMENT OF NO
                                              SECONDARY MEANING AND
14          v.                                SUMMARY JUDGMENT OF NON-
                                              INFRINGEMENT**
15
    THE GAP, INC., a corporation, and OLD NAVY,   Date:    December 28, 2007
16  LLC, a limited liability company,             Time:    8:30 a.m.
                                                  Place:   Court Room 8, 19th Floor
17                 Defendants.                    Judge:   Hon. Charles R. Breyer

18

19

20

21

22

23

24

25

26

27

28

HOWREY
LLP

# TABLE OF CONTENTS

I.      STATEMENT OF ISSUES ...................................................................................... 1

II.     INTRODUCTION ................................................................................................... 1

III.    STATEMENT OF MATERIAL FACTS ................................................................ 2

        A.      Cross-Stitching in the Apparel Industry .................................................... 2

        B.      Gap and its Use of Cross-Stitching On Apparel ........................................ 3

        C.      Project E and Its Use of Cross-Stitching ................................................... 4

                1.      Project E's cross-stitching ............................................................... 4

                2.      Project E's Trademark Application .................................................. 4

                3.      Use of Project E's alleged mark ...................................................... 5

IV.     ARGUMENT ......................................................................................................... 5

        A.      Summary Judgment Standards .................................................................. 5

        B.      If at All, Project E's Cross-Stitched Xs Can Only Possibly
                Function As a Trademark if They are Placed in the Left Breast
                Area ........................................................................................................... 6

                1.      Standing Alone, Project E's Cross-Stitched Xs Lack
                        Inherent Distinctiveness Because They Are Purely
                        Decorative ....................................................................................... 6

                2.      Project E's Cross-Stitched Xs Might Only Be Distinctive
                        When Placed in a Location Typically Associated With
                        Source Indication for Apparel ........................................................ 7

                3.      Project E's Cross-Stitched Xs Lack Secondary Meaning ............... 9

                        a.      Length and manner of use ...................................... 10

                        b.      Advertising and Promotion ..................................... 11

                        c.      Third Party Use ....................................................... 12

                        d.      Evidence of Source Indication ............................... 12

        C.      Even if Secondary Meaning is Established, Gap has a Fair Use
                Defense and  Therefore Does not Infringe ................................................ 13

                1.      Gap's Cross-Stitching is Descriptive Use Because it
                        Conveys a Certain General Style ................................................... 14

                2.      Gap's Prominent and Consistent Use of its Own Strong
                        Trademarks Precludes a Finding that it is Using Xs as

1

               Trademarks ................................................................................................ 15

2   V.        CONCLUSION .......................................................................................... 16

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY
LLP
Case No. C 07-2280 (CRB)              -ii-
Defendant's Motion and Motion for Summary Judgment
of Non-Infringement

# TABLE OF AUTHORITIES

## CASES

*Aerogroup v Marlboro et al,*
    977 F. Supp. 264 (S.D.N.Y. 1997) ............................................................................. 6, 7, 10, 11

*Anchor Hocking Glass Corp. v. Corning Glass Works,*
    162 U.S.P.Q. 288 (T.T.A.B. 1969) ................................................................................ 7, 9

*Aromatique, Inc. v. Gold Seal, Inc.,*
    28 F.3d 863 (8th Cir. 1994) .......................................................................................... 11

*Brooks Shoes Manufacturing Co. v. Suave Shoe Corp.,*
    533 F. Supp. 75 (S.D. Fla. 1981) ........................................................................... *passim*

*Brother Records, Inc. v. Jardine,*
    318 F.3d 900 (9th Cir. 2003) ........................................................................................ 13

*Car-Freshner Corp. v. S.C. Johnson & Son,*
    70 F.3d 267 (2d Cir. 1995) ........................................................................................... 15

*Empire Nat'l Bank of Traverse City v. Empire Bank of America,*
    559 F. Supp. 650 (W.D. Mich. 1983) ........................................................................... 12

*Genesco, Inc. v. Levi Strauss & Co.,*
    219 U.S.P.Q. 1205 (T.T.A.B. 1983) .............................................................................. 9

*Hershy The Tin Man v. Avon Products, Inc.,*
    59 U.S.P.Q.2d 1520 (D. Mon. 1999) ...................................................................... 14, 15

*In re Astro-Gods Inc.,*
    223 USPQ 621 (TTAB 1984) ........................................................................................ 8

*In re David Crystal, Inc.,*
    296 F.2d 771 (C.C.P.A. 1961) ....................................................................................... 6

*In re Dimitri's Inc.,*
    9 USPQ2d 1666 (TTAB 1988) ...................................................................................... 8

*In re Dual-Deck Video Cassette Recorder Antitrust Litigation,*
    11 F.3d 1460 (9th Cir. 1993) .......................................................................................... 6

*In re Redken Laboratories, Inc.,*
    170 U.S.P.Q. 526 (T.T.A.B. 1971) .............................................................................. 11

*In Re The Todd Co., Inc.,*
    290 F.2d 597 (C.C.P.A. 1961) ....................................................................................... 7

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.,*
    287 F.3d 866 (9th Cir. 2002) ............................................................................... 6, 9, 11

HOWREY
LLP

Case No. C 07-2280 (CRB)
Defendants' Notice of Motion and Motion Summary
Judgment of Non-Infringement

-iii-

*Levi Strauss & Co. v. Blue Bell, Inc.*,
    778 F.2d 1352 (9th Cir. 1985) ...................................................................... 9, 10, 12

*New Kids on the Block v. News Am. Pub., Inc.*,
    971 F.2d 302 (9th Cir. 1992) .................................................................................. 13

*Secular 17 Organizations for Sobriety, Inc.* v. *Ullrich*,
    213 F.3d 1125 (9th Cir. 2000) .................................................................................. 9

*Soweco, Inc. v. Shell Oil Co.*,
    617 F.2d 1178 (5th Cir. 1980) ................................................................................ 14

*Spex, Inc. v. The Joy of Spex, Inc.*,
    847 F. Supp. 567 (N.D. Ill. 1994) ........................................................................... 12

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*,
    64 F.3d 1055 (7th Cir. 1995) .................................................................................. 14

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
    505 U.S. 763 (1992) ........................................................................................... 6, 9

*U.S. Express, Inc. v. U.S. Express Inc.*,
    799 F. Supp. 1241, 1246 (D.C. 1992) ..................................................................... 12

**STATUTES**

15 U.S.C. §1051 ............................................................................................................. 8

15 U.S.C. §1052 ............................................................................................................. 8

15 U.S.C. §1127 ............................................................................................................. 8

**OTHER AUTHORITIES**

*McCarthy on Trademarks* at §15.56 .............................................................................. 11

*McCarthy on Trademarks*, §15.9 .................................................................................. 12

*TMEP §1202.3* ............................................................................................................... 7

**RULES**

Fed. R. Civ. P. 56(c) ...................................................................................................... 5

**TO PLAINTIFF AND ITS ATTORNEYS OF RECORD:**

Please take notice that on December 28, 2007, at 8:30 a.m. in the courtroom of the Honorable Charles R. Breyer, Defendants The Gap, Inc. and Old Navy, LLC, will move for summary judgment of no secondary meaning and of non-infringement. This motion is supported by the Memorandum of Points and Authorities below and the Declaration of Lisa S. Buccino and accompanying evidence.

**I.    STATEMENT OF ISSUES**

Through this motion Gap seeks:

1.    A determination that Plaintiff's trademark rights, if any, are limited to two side-by-side cross-stitched Xs in the left breast area of a top.

2.    A determination of non-infringement as to Gap's use of cross-stitched Xs under the fair use doctrine.

**II.    INTRODUCTION**

This is a trademark infringement case involving one of the oldest and most basic design elements used on apparel – the cross-stitch. A cross-stitch is two pieces of thread that cross to form the appearance of an X. It has been around for more than 300 years, and is one of the oldest forms of embroidery. Cross-stitching is widely used by clothing designers, particularly for the latest fashion trend: vintage style clothing (i.e. new clothing that is purposely made to look old and heavily worn). Cross-stitching on clothing is popular because it helps give clothing a desirable "worn in" or repaired look. Numerous clothing companies design apparel with cross-stitches. They are ubiquitous and plainly ornamental, and are widely used as decorations, not trademarks.

The plaintiff in this case, Project E, decided to get "cheeky" by placing cross-stitches instead of a traditional logo on polo-style shirts in 2004. Project E took a plain polo-style shirt, applied "hand grinding" to give it a vintage look (i.e. tears, hanging threads, frayed seams, etc.) and then sewed two cross-stitches side by side where a logo would typically be placed (in the area of the left breast). This created the impression that an actual logo (such as an alligator or polo player) had been removed from the shirt, and the resulting tear was repaired by two cross-stitches. Project E refers to these two faux-

1  functional cross-stitches as its "anti-logo."

2      Project E is now trying to assert its "anti-logo" against The Gap, Inc. and Old Navy, LLC[1] for

3  making decorative, non-trademark usage of cross-stitching on vintage style clothing.  Project E's

4  claims are without merit and Gap is entitled to summary judgment for the following reasons.

5      First, Project E's trademark rights, if any, are extremely limited due to the lack of inherent

6  distinctiveness of cross-stitches on clothing.  At most, Project E's rights only cover two side by side

7  cross-stitches placed in the typical logo location of a shirt or sweater (at the breast area).  When used

8  anywhere else on apparel, such as on a collar, seam, sleeve, or waistline, Project E's cross-stitches are

9  purely decorative and lack secondary meaning.

10      Second, Gap has not used two side by side cross-stitches, or any cross-stitching for that matter,

11  as a logo.  Rather, Gap has only used cross-stitching in a decorative, non-trademark fashion, and as one

12  of several elements in the design of trendy vintage-style clothing.  This is a classic case of fair use

13  under well-established trademark law.

14  **III.    STATEMENT OF MATERIAL FACTS**

15      **A.    Cross-Stitching in the Apparel Industry**

16      Cross-stitching is one of the oldest forms of embroidery and can be found all over the world.

17  Ex. A.[2]  Specifically, there are samples of cross-stitching on clothing as early as the 16th century.  *Id.*

18  Today, decorative use of cross-stitching continues to be a popular trend in the apparel industry and is

19  used by dozens of well-known clothing designers and retailers including Ralph Lauren, Benetton and

20  Lucky Brand, to name just a few.  Ex. B.  Like Gap, many companies use cross-stitching to convey the

21  "vintage look" or the "distressed" look which has become popular in the industry.  Exs. B, C.  In other

22  words, designers are using cross-stitching, patches and other embroidery to create the appearance of a

23  favorite, worn-in piece of clothing that has been "repaired."  Ex. C.  Other clothing companies like

24  Gymboree and Billabong have used cross-stitching to embellish a garment by placing brightly colored

25

26  [1] The Gap, Inc. and its wholly-owned subsidiary, Old Navy, LLC will be referred to collectively as "Gap"
27  unless otherwise specified.

28  [2] All exhibits cited to herein are attached to the declaration of Lisa S. Buccino.

1   stitches around the collar or on a pocket.   Ex. B.   Regardless of the look or trend, the commonality

2   amongst all these designers is that in every case, cross-stitching is being used for decoration, not for

3   trademark purposes.

4            **B.        Gap and its Use of Cross-Stitching On Apparel**

5            The Gap, Inc. is a leading apparel retailer offering clothing and accessories for men, women

6   and children under the Gap®, babyGap®, Banana Republic® and Old Navy® brand names.   Ex. D.

7   The company's clothing is sold in company owned stores operated under these respective brand

8   names.   *Id.*   The clothing is also clearly marked with the company's brand names on labels and hang-

9   tags.   Exs. E at 6-7, I.

10           As the number one branded apparel company in the world, Gap is known for being a leader in

11   the fashion industry.   Ex. J.   As such, it is constantly incorporating the latest design trends into its

12   clothing lines.   It is no surprise then that when vintage style clothing became popular, Gap was one of

13   many to use cross-stitching, hanging threads and frayed seams to convey a "distressed" or embellished

14   look.   Ex. E.   In the fall of 2006 and spring of 2007, Old Navy came out with a few items (out of

15   thousands that season) with cross-stitching.   Ex. G.   These items included two women's cable knit

16   sweaters and two girls' polo-style shirts from Old Navy.   Exs. E at 3-5, G.   On the sweaters, none of

17   the cross-stitching appears in the logo-typical location.   Exs. E at 4, 5.   Rather, the stitching appears

18   near the hemline of the sweater or on the sleeve seam.   *Id.*   Similarly, the stitching on the polo-style

19   shirts is also on the sleeves (three cross-stitches), with a single cross-stitch also placed on the pocket

20   seam.   Ex. E at 3.   Similarly, in the fall of 2007, babyGap offered for sale three styles of boy's roll-up

21   pants that included cross-stitches on the side and back pocket flaps.   Exs. F, E at 2.   These items from

22   Old Navy and babyGap are the allegedly infringing items identified by Project E, yet they all have

23   cross-stitching that is merely decorative and part of the popular vintage or embellished style of

24   clothing.[3]   Exs. E, H, I.   Even Project E admits they are not used as indications of source.   Exs. K, L.

25

26   [3]  Project E recently served a supplemental interrogatory response identifying a pair of Old Navy shorts as
     infringing but did not provide a style number.   Ex. I.   Gap has yet to confirm production or sale of these shorts
27   but nevertheless, the Xs only appear on interior label next to the Old Navy brand name and are obviously
     decorative.   *Id.*

28

**C.    Project E and Its Use of Cross-Stitching**

Project E is an apparel company based in Atlanta, Georgia.  Ex. H.   Project E got its start selling vintage-looking t-shirts but more recently started selling polo-style shirts, sweaters and dresses, all for adults.  Ex. U at 3.  Project E intentionally distresses its garments such that they appear worn or used.  *Id.*  To achieve this "look," Project E uses various design elements including cross-stitching, hanging threads and/or frayed seams.  Ex. M.  Project E distributes its clothes to mostly boutique-type retailers as opposed to retail chains like Gap or Old Navy.  Ex. S.  Project E has no retail stores of its own.

**1.    Project E's cross-stitching**

In its basic form, Project E's alleged trademark consists of two side-by-side cross-stitched Xs on the breast area of a garment. Ex. N at 6.  The Xs are not fanciful – they consist of nothing more than two pieces of thread.  *Id*.  Project E itself describes its cross-stitched Xs as "the anti logo."  Ex. H.  In addition to using this "anti-logo," Project E has also used decorative cross-stitching in different ways on its clothing.  Ex. M.  For example, Project E will put Xs in other locations such as on the cuff of pants or the seam of a sleeve.  *Id.*  Often times the Xs will appear on top of one another as opposed to side-by-side.  Exs. M at 4, Q at 6, 12.  Sometimes Project E uses only one X, and other times three or four Xs.  Exs. O at 21, P at 3, 10.  The Xs also vary in color depending on the garment on which they are placed.  Exs. O, P, Q.

**2.    Project E's Trademark Application**

On June 15, 2004, Plaintiff Project E filed a trademark application for its cross-stitched Xs.  Ex. N.  As required for all trademark applications, Project E submitted an application, drawing page, and specimen of the claimed mark, which show that Project E intended to claim two side by side Xs in the left breast area of a top as its trademark.  *Id.*  In the application, Project E described its mark as "two-hand stitched Xs side by side."  Ex. N at 2, 3.   On the drawing page, Project E illustrated two side by side Xs at the left breast of a polo style shirt.  Ex. N at 5, 13.   Additionally, Project E's specimen consists of a photo of a polo-style shirt bearing two cross-stitched Xs on left breast.  Ex. N at 6.  Finally, in response to an inquiry from the Trademark Examiner regarding the drawing page, Project E specifically stated that "the shirt depicted on the drawing page is not a feature of the mark

1  and is depicted in broken lines to show the *placement of the mark only*." Ex. N at 11. (emphasis

2  added).

### 3.    Use of Project E's alleged mark

4      In its trademark application, Project E also states under oath that it began using two cross-

5  stitched Xs on clothing on or about January 1, 2004 but its first selling season did not come until nearly

6  nine months later (e.g. the Fall of 2004). Exs. N, O. Since then, Project E's marketing of its Xs as a

7  trademark has been extremely limited, at best. For example, until just recently, Project E had not used

8  its cross-stitched Xs as a corporate logo. Exs. O, P, R, S. In fact, it wasn't until *after* Gap first used

9  decorative cross-stitching that Project E began using Xs in conjunction with its company name.

10 *Compare* Exs. O, P with Q. The same holds true for Project E's website. Prior to the website being

11 redesigned this past month, Project E's website did not feature Xs at all. Ex. S. Likewise, Project E's

12 neck tags and labels, and catalogue covers, did not feature Xs as a symbol for the company until

13 sometime in 2007, long after Gap used the accused decorative cross-stitching. Compare Exs. O, P, R

14 with Q. Project E's promotion of its Xs as a trademark is virtually non-existent. Other than the line

15 drawings contained in its sales catalogs (which are distributed solely to retailers, not to the general

16 public) and some website photos of celebrities wearing Project E apparel with Xs, Project E has

17 produced no other evidence of marketing efforts. Ex. V. Project E does not advertise in magazines, on

18 billboards or otherwise. In fact, in response to a document request, Project E admitted that it had no

19 advertising expenditures. *Id*. From the time that Project E first began selling cross-stitched Xs on polo

20 shirts (Fall 2004), to the time Gap incorporated decorative cross-stitching in the accused garments,

21 Project E's usage of its alleged trademark was essentially limited to the appearance of cross-stitching

22 on its apparel.

## IV.    ARGUMENT

### A.    Summary Judgment Standards

25     A motion for summary judgment must be granted when "there is no genuine issue as to any

26 material fact and… the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.

27 56(c). The Ninth Circuit has not hesitated to uphold summary judgment on the issues of secondary

28 meaning or fair use in trademark cases. *See, Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d

866, 873 (9th Cir. 2002) (granting defendant's motion for summary judgment of non-infringement because plaintiff failed to produce enough evidence to establish secondary meaning); *In re Dual-Deck Video Cassette Recorder Antitrust Litigation*, 11 F.3d 1460, 1467 (9th Cir. 1993) (finding fair use as "a matter of law" on a motion for summary judgment. As set forth below, it is undisputed that Project E has no trademark rights in its cross-stitched design in locations other than possibly on the left-breast area of a top. Similarly, there are no disputed issues of fact regarding Gap's fair use of cross-stitching on clothing.

**B.     If at All, Project E's Cross-Stitched Xs Can Only Possibly Function As a Trademark if They are Placed in the Left Breast Area**

To the extent it has a protectable trademark at all, Project E's trademark rights in cross-stitched Xs must be limited to the area where consumers might expect a logo to appear on apparel, specifically, the left breast area of a shirt or sweater.[4] When placed elsewhere, Project E's cross-stitched Xs fail to serve as a trademark because they are merely ornamental and have not achieved secondary meaning.

**1.     Standing Alone, Project E's Cross-Stitched Xs Lack Inherent Distinctiveness Because They Are Purely Decorative**

Project E's cross-stitched Xs cannot function as a trademark because they are a common decorative element on apparel and not inherently distinctive. A symbol is capable of being protected as a trademark only if it 1) is inherently distinctive, or 2) has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). Symbols such as Project E's cross-stitched X, lack inherent distinctiveness when they are commonly used as decoration for a type of good. *See, Brooks Shoes Manufacturing Co. v. Suave Shoe Corp.,* 533 F. Supp. 75 (S.D. Fla. 1981)(use of "V" on shoes not inherently distinctive); (*In re David Crystal, Inc.,* 296 F.2d 771 (C.C.P.A. 1961) (color stripes on athletic socks not inherently distinctive); *Aerogroup v Marlboro et al*, 977 F. Supp. 264 (S.D.N.Y. 1997) (diamond shaped pattern on sole of shoes is decorative and lacks inherent

---

[4]  For purposes of this motion only, Gap is not disputing that Project E's alleged mark may be distinctive enough to function as a trademark when placed at the left breast area of a top. Gap, however, is not conceding this point.

1  distinctiveness); *Anchor Hocking Glass Corp. v. Corning Glass Works*, 162 U.S.P.Q. 288, 291-92

2  (T.T.A.B. 1969) (floral designs commonly found on cookware, therefore not inherently distinctive).

3      Like stripes on socks or flowers on cookware, cross-stitching is a common decorative element

4  on clothing.  For example, many clothing companies use cross-stitching to convey the "distressed" or

5  "faux-functional" look – e.g. making clothes look used and repaired.  Others use cross-stitching to

6  simply embellish or decorate clothing in a colorful manner.  Ex. B.  Such popular clothing companies

7  as Benetton, Ralph Lauren, Billabong, Lucky Brand, Gymboree, Forever 21, Enyce, Free People,

8  Proper English, Raer, Mason, Vintage Red, Jimmy Z, Canyon River Blues, True Religion, Da-nang

9  and Volcom, have all used cross-stitching on clothing.  *Id.*

10      Standing alone, Project E's use of two cross-stitched Xs on apparel appears to the ordinary

11  consumer as a decorative design element on clothing.  *See*, Ex. M.  It is not inherently distinctive as a

12  trademark.  In other words, when someone encounters a Project E garment for the first time on a

13  clothing rack, and knowing nothing else about the maker of the garment, two cross-stitched Xs do not

14  communicate any indication of source.  *Id.*  They do not say, "hey, I'm a brand."  They simply say,

15  "hey, I'm a cool design."  As such, they are purely ornamental.  *See, Aerogroup*, 977 F. Supp. at 267

16  (mere decorative and ornamental feature of the good does not indicate source.)  The only indicator of

17  source on the garment is the name Project E on the interior label.  Ex. M.

18          **2.    Project E's Cross-Stitched Xs Might Only Be Distinctive When Placed in a**

19                **Location Typically Associated With Source Indication for Apparel**

20      Ornamentation can, however, under limited circumstances be distinctive if placed in a location

21  typically associated with source indication for a particular good.  *See In Re The Todd Co., Inc.,* 290

22  F.2d 597 (C.C.P.A. 1961) (otherwise ornamental design held registerable for safety paper products

23  where the record showed that it had long been the practice in the industry to use distinctive overall

24  surface designs to indicate origin of the products).

25      Project E clearly understood this concept, and framed its trademark application in such a way

26  as to avoid an ornamentation rejection by the Patent and Trademark Office ("PTO").  *See, TMEP*

27  *§1202.3, Refusal on Basis of Ornamentation* ("Subject matter that is merely a decorative feature does

28  not identify and distinguish the applicant's goods and, thus, does not function as a trademark. A

decorative feature may include words, *designs*, slogans or other trade dress. This matter should be refused registration because it is merely ornamentation and, therefore, does not function as a trademark as required by §§1, 2 and 45 of the Trademark Act, 15 U.S.C. §§1051, 1052 and 1127) (emphasis added).

According to the TMEP, the examining attorney must also consider the size, location and dominance of the proposed mark, as applied to the goods, to determine whether ornamental matter serves a trademark function. *Id.*, *citing*, *In re Dimitri's Inc.*, 9 USPQ2d 1666, 1667 (TTAB 1988); *In re Astro-Gods Inc.*, 223 USPQ 621, 623 (TTAB 1984). "A small, neat and discrete word or design feature (*e.g.*, small design of animal over pocket or **breast portion of shirt**) may be likely to create the commercial impression of a trademark, whereas a larger rendition of the same matter emblazoned across the front of a garment (or a tote bag, or the like) may be likely to be perceived merely as a decorative or ornamental feature of the goods. However, a small, neat and discrete word or design feature will not necessarily be perceived as a mark in all cases." (Emphasis added.)

Accordingly, to the extent Project E has trademark rights at all, its rights derive from, and should be limited to, the placement of its cross-stitched Xs in a location typically associated with source identification, e.g. the left breast area of a shirt.

Project E must have been aware that its cross-stitched Xs, standing alone, would not be distinctive enough to merit trademark protection because of the extensive use of cross-stitching in the clothing industry. Indeed, Project E stressed the configuration and placement of its cross-stitched Xs in a location typically associated with source-indication in its trademark application. In its application, Project E described its mark as "two hand-stitched Xs side by side." Ex. N at 2, 3. Project E's specimen consisted of a photograph showing two side by side Xs on the left-breast pocket area of a polo shirt. Ex. N at 6. Finally, Project E's drawing page depicted the Xs in this same configuration and logo-typical location along with the explanation that, "The shirt depicted on the drawing page is not a feature of the mark and is depicted in broken lines to show the *placement of the mark only*." Ex. N at 11, 13 (emphasis added). In making these repeated representations to the PTO, Project E purposefully limited its trademark protection to "two-hand stitched Xs side by side" in the left breast area of a top. Project E should not be permitted to now claim trademark protection for locations and

1  configurations that it specifically disclaimed.  Therefore, Project E's trademark rights, if any, should be

2  limited to "two-hand stitched Xs side by side" in the left-chest area of a shirt or sweater.  For

3  trademark protection in any other location, Project E is required to demonstrate that its cross-stitched

4  Xs have acquired secondary meaning.  *See Two Pesos*, 505 U.S. at 769.

5              **3.      Project E's Cross-Stitched Xs Lack Secondary Meaning**

6         As set forth above, to the extent Project E's cross-stitched Xs are distinctive at all, they may

7  only be distinctive because of their configuration and placement in the left breast pocket area of a shirt

8  – e.g. a location typically associated with source indication for a particular good.  *See Genesco, Inc. v.*

9  *Levi Strauss & Co.*, 219 U.S.P.Q. 1205 (T.T.A.B. 1983) (holding that Levi's trademark had acquired

10 secondary meaning only with respect to pants).  When used elsewhere, Project E's cross-stitched Xs do

11 not constitute a trademark because Project E has not produced any evidence of secondary meaning let

12 alone the "convincing" evidence needed for ornamental symbols.  *See, Anchor Hocking Glass*, 162

13 U.S.P.Q. at 291; *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985) (while a red

14 pocket tab acquired secondary meaning for Levi Strauss when appearing on the back pocket of jeans, it

15 did not achieve secondary meaning for Levi Strauss when used on a shirt pocket).

16        Project E bears the burden of proof on the issue of secondary meaning.  *Secular 17*

17 *Organizations for Sobriety, Inc.* v. *Ullrich,* 213 F.3d 1125, 1130 (9th Cir. 2000).  It is therefore Project

18 E's burden to show that in the minds of consumers, clothing marked with cross-stitched Xs emanates

19 from a single source – e.g. Project E.  *See, Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d

20 866, 873 (9th Cir. 2002); *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985).

21 Project E must also show that secondary meaning existed prior to the date Gap commenced use of

22 cross-stitching in the fall of 2006.  *See, Brooks,* 533 F. Supp. at 77.  Because secondary meaning is a

23 question of fact, in order to survive summary judgment, Project E is required to come forward with

24 enough evidence of secondary meaning to establish a genuine dispute of fact.  *See, Japan Telecom*,

25 287 F.3d at 873.

26        In determining whether Project E's cross-stitched Xs have acquired secondary meaning when

27 placed in areas other than the left-breast, the court should consider: 1) the length and manner of use of

28 the cross-stitched Xs; 2) Project E's degree and manner of advertising of garments bearing cross-

1  stitched Xs, 3) whether use of cross stitched Xs has been exclusive; and 4) whether consumers

2  associate cross-stitched Xs with Project E.  *See, Id*.  It is undisputed that when these factors are applied

3  to Project E's cross-stitched Xs, there is insufficient evidence to establish secondary meaning.

4                                        **a.       Length and manner of use**

5          Project E claims to have first used cross-stitched Xs on clothing on or about January 1, 2004.

6  Ex. N.  However, its first selling season was not until the fall of 2004.  *See,* Ex. R.  Since Gap's earliest

7  accused garment was sold in the fall of 2006, Project E must prove that its cross-stitched Xs acquired

8  secondary meaning during this short two year period.  While there is no per se rule regarding the

9  length of time for acquiring secondary meaning, a mark cannot achieve secondary meaning in a short

10  period of time absent extensive advertising and marketing efforts.  *See Levi Strauss*, 778 F.2d at 1358

11  (despite three years of use Levi's pocket tab had not acquired secondary meaning when used on shirts);

12  *Brooks Shoes Manufacturing Co. v. Suave Shoe Corp,* 533 F. Supp. 75, 80 (S.D. Fla. 1981) (even

13  though Brooks had been using the mark for six years, the letter "V" as used on shoes lacked secondary

14  meaning.)  As discussed further below, Project E does not have the requisite marketing and advertising

15  to support a finding of secondary meaning in a short, two year period.

16          Project E's use of the two "side by side" cross-stitched Xs during the relevant two year period

17  was inconsistent.  Project E sold numerous styles of garments without any cross-stitched Xs, including

18  t-shirts, tank tops and sweatshirts.  Ex. O, P, Q.  Of the garments which actually *did* contain cross-

19  stitched Xs, most had them in the left breast area, although they were also placed in other design-

20  inspired locations such as the seam of a sleeve, the hemline of a shirt, the cuff on a pair of leggings and

21  the collar of a polo shirt.  Ex. M.  Some times the Xs were up and down, not side by side.  Exs. M at 4,

22  Q at 6, 12.  And, in some instances Project E used three or four Xs.  Ex. O at 21, P at 10.  Furthermore,

23  Project E did not use its two Xs in conjunction with its company name until long after Gap began using

24  decorative cross-stitching.  Exs. R, S.  In fact, it wasn't until this year that Project E began using Xs as

25  part of its company logo in its labels, on the cover of its sales catalogues and in its recently redesigned

26  website.  *Compare*, Ex. R, S with Q, U.  Furthermore, Project E has never used the "TM" symbol in

27  conjunction with its cross-stitched Xs.  *See, Aerogroup,* 977 F. Supp at 266 (failure to use TM symbol

28  or the "registered" symbol undermined plaintiff's claim of secondary meaning).  This limited time

1  period and inconsistent manner of use, coupled with the cross-stitches' ornamental appearance and the

2  lack of a TM symbol, all weigh heavily against the existence of secondary meaning.

3                                    **b.    Advertising and Promotion**

4          In examining whether a party's advertising is enough to establish secondary meaning, courts

5  look at the "amount, nature and geographic scope" of advertising "with an eye towards how likely the

6  advertising is to expose a large number of the relevant consuming public to the use of the symbol as a

7  trademark …" *Japan Telecom,* 287 F.3d at 875 (holding that Plaintiff's limited advertising in a

8  Japanese telephone directory was insufficient evidence to establish secondary meaning because it was

9  only directed to a "tiny subset" of relevant buyers); *see also, Aromatique, Inc. v. Gold Seal, Inc*., 28

10 F.3d 863 (8th Cir. 1994)(expenditures on advertising and promotion may be relevant to a determination

11 of secondary meaning because the amount spent may be indicative of the extent to which the public

12 associates that advertised mark with the source of the product bearing the mark); *but see, In re Redken*

13 *Laboratories, Inc.*, 170 U.S.P.Q. 526 (T.T.A.B. 1971)(evidence of large advertising expenditures held

14 insufficient proof of secondary meaning).  In essence, the less time the mark has been in use, the more

15 advertising and marketing is required.  *See, McCarthy on Trademarks* at §15.56.  Furthermore, in order

16 to establish secondary meaning, the advertising must feature the mark in question such that consumers

17 can identify the source of the goods.  *Aerogroup Int'l,* 977 F. Supp at 268.

18         In the present case, Project E cannot establish secondary meaning after using cross-stitched Xs

19 for only two years because its advertising is virtually non-existent. Project E does not advertise in

20 magazines, newspapers or on TV.  There are no billboards or commercials.  In fact, Project E has not

21 produced any marketing materials, brochures or promotional materials at all.  This is because, as

22 Project E admits, there are none.  Ex. V.  Project E's only effort to promote its clothes in printed

23 advertising comes from its catalogs and website.  However, like the Plaintiff in *Japan Telecom,* Project

24 E's catalogs are only distributed to a small subset of the consuming public – e.g. retailers, not the

25 public at large.  Project E's old website did not even mention its alleged trademark.[5]  It merely

26

27  [5]  Gap anticipates that Project E will point to its use of "Xs" on its newly designed website which was just recently re-
launched. Ex. U. However, this does not create a disputed issue of fact because post-litigation marketing cannot be relied

28  upon to establish secondary meaning.  Secondary meaning must exist prior to the date Gap commenced use of cross-

                                                                                                   (Continued...)

Case No. C 07-2280 (CRB)                          -11-
Defendant's Motion and Motion for Summary Judgment
of Non-Infringement

1  contained pictures of celebrities wearing Project E apparel, and many of these pictures did not even

2  show the alleged mark.  Ex. S.  Aside from these mediums, Project E has not advertised its alleged

3  trademark in any printed publications or otherwise.  This factor thus weighs heavily towards a finding

4  of no secondary meaning.

5                                        **c.        Third Party Use**

6           Third party use of a substantially similar mark to promote the same goods or services to the

7  same consumer class weighs against a finding that the consumer class associates the mark with one

8  source.  *See, McCarthy on Trademarks,* §15.9.  Courts have repeatedly found that where there is

9  extensive third party use of similar marks on similar goods, no secondary meaning can exist.  *See,*

10 *Empire Nat'l Bank of Traverse City v. Empire Bank of America,* 559 F. Supp. 650, 656 (W.D. Mich.

11 1983) (holding that extensive use of the word 'Empire' in the banking industry suggests no secondary

12 meaning); *Spex, Inc. v. The Joy of Spex, Inc.,* 847 F. Supp. 567, 577 (N.D. Ill. 1994) (no secondary

13 meaning found where plaintiff failed to show that it had exclusive use of the name "Spex" for

14 eyeglasses); *U.S. Express, Inc. v. U.S. Express Inc.,* 799 F. Supp. 1241, 1246 (D.C. 1992) (use of "U.S.

15 Express" by numerous trucking companies negated Plaintiff's claim of secondary meaning for "U.S.

16 Express" for air freight delivery services).

17          In light of the rampant use of cross-stitching on clothing, Project E cannot establish that it has

18 exclusively used cross-stitched Xs on clothing.  Ex. B.  In light of this widespread use of cross-stitched

19 Xs on clothing there is simply no way Project E can demonstrate that consumers only associate two

20 side by side or other uses of cross-stitched Xs on apparel with Project E.

21                                 **d.        Evidence of Source Indication**

22          Given Project E's inconsistent use and placement of cross-stitched Xs, it is not surprising that

23 Project E has absolutely no evidence indicating that in the minds of consumers two cross-stitched Xs

24 on a shirt sleeve or hemline equal Project E.  This lack of evidence is fatal to any possible claim of

25 secondary meaning.  *See, Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352 (9th Cir. 1985)(no

26 _____

27 (...Continued)

   stitching in the fall of 2006.  *See, Brooks,* 533 F. Supp. at 77.

28

1    secondary meaning where trademark owner failed to provide evidence that a "substantial segment of

2    the purchasing public" associated the tab as used on shirts with a single source).  For example, in

3    *Brooks Shoes Manufacturing Co. v. Suave Shoe Corp,* the court held that the "critical question in

4    considering the evidence is not the extent of the promotional efforts but their effectiveness in creating

5    an association between the "V" design and Brooks shoes."  533 F. Supp. 75, 80 (S.D. Fla. 1981).  Even

6    though plaintiff in *Brooks* sponsored large scale sporting events and had significant advertising

7    expenditures and substantial sales, this was not enough.  *Id* at 80.  Ultimately the court determined that

8    plaintiff lacked trademark rights in the letter "V" on shoes because it could not show that the buying

9    public associated "V" with Brooks shoes.  *Id.*

10       Likewise, Project E has no evidence that when consumers see cross-stitched Xs they think of

11   Project E.  On the contrary, for the reasons set forth above it is quite unlikely that anyone would view

12   two cross-stitched Xs as a trademark, particularly if they are used in a non-source identifying location

13   such as on the hem or the sleeve of a shirt.  Moreover, Project E never uses the TM symbol.  Given the

14   prevalence of cross-stitching in the fashion industry, consumers are more likely to assume that when

15   they see cross-stitched Xs on a shirt hem or the neck of the sweater that the cross-stitching is being

16   used for decoration.  Because Project E has no evidence to the contrary, Project E's trademark rights –

17   to the extent they exist at all – must be limited to two side-by-side Xs in left breast area.

18       **C.    Even if Secondary Meaning is Established, Gap has a Fair Use Defense and**

19              **Therefore Does not Infringe**

20       Even if Project E can establish secondary meaning, which it cannot, it would not grant Project

21   E the right to preclude others from using cross-stitching in every possible instance.  The "classic fair

22   use defense" negates a finding of infringement where defendant uses the mark in a non-trademark,

23   non-source-indicating way.  *See Brother Records, Inc. v. Jardine*, 318 F.3d 900, 905 (9th Cir. 2003)

24   (the classic fair use defense applies when marks "possess both a primary meaning and a secondary

25   meaning -- and only when the mark is used in its primary descriptive sense rather than its secondary

26   trademark sense."); *see also New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 306 (9th Cir.

27   1992) ("[t]he 'fair use' defense, in essence, forbids a trademark registrant to appropriate a descriptive

28   term for his exclusive use and so prevent others from accurately *describing a characteristic* of their

1   goods.") (emphasis added).

2       Gap does not use cross-stitched Xs in a trademark sense.  Rather, Gap uses cross-stitching to

3   convey the vintage "distressed" or embellished look that is trendy and attractive.  Standing alone, this

4   would be sufficient to merit summary judgment of fair use.  *See, e.g.*, *Sunmark, Inc. v. Ocean Spray*

5   *Cranberries, Inc.*, 64 F.3d 1055, 1058 (7th Cir. 1995) (finding fair use of "sweet tart" to describe taste

6   of defendant's cranberry juice: "[t]hat sweeTARTS is an incontestable mark for sugar candy does not

7   make Sunmark the gatekeeper of these words for the whole food industry."); *Soweco, Inc. v. Shell Oil*

8   *Co.*, 617 F.2d 1178 (5th Cir. 1980) (finding fair use of "larvacide" to describe larvae-killing properties

9   of defendant's products

10         **1.**     **Gap's Cross-Stitching is Descriptive Use Because it Conveys a Certain**

11                  **General Style**

12       The Gap fairly uses cross-stitched Xs because it uses them not as source indicators, but merely

13   to convey the message that its garments appear "repaired" and worn-in as part of the vintage or

14   "distressed" clothing trend.  *See Hershy The Tin Man v. Avon Products, Inc.*, 59 U.S.P.Q.2d 1520, *11-

15   *14 (D. Mon. 1999) (finding an applicable fair use defense where the symbol-mark was not used as a

16   trademark, but rather to convey the message of love and affection).  In *Hershy*, the defendant was

17   accused of infringing plaintiff's registered mark for a heart-shaped cutout on animal figurines.  The

18   accused product was a necklace with an attached metal hinged book containing a heart-shaped cutout

19   in the middle of the front cover.  Uncomfortable with plaintiff's trademark-assertion of such a

20   ubiquitous symbol, the court stressed its "concern that the primary cost of allowing [trademarks] is the

21   restricted use of words in the commercial context."  *Id*. at *13 (*citing New Kids*, 971 F.2d at 306).  The

22   court ultimately held that defendant had an applicable fair use defense as a matter of law, primarily

23   because defendant used its heart shape "not to identify the producer but rather to identify the product,

24   in this case as a decoration conveying a message of love and affection."  *Id*. at *11.

25       Similarly, Gap's cross-stitched Xs are not meant to identify Gap as the producer of the goods

26   upon which they are placed.  As set forth above, Gap only used cross-stitching to follow a popular

27   design trend by making certain garments look old and repaired.  Like the jewelry designers in *Hershy*,

28   Gap made a stylistic decision – as did numerous other retail apparel companies – to make its garments

1   look vintage by using cross-stitching along seams and elsewhere.  Indeed, even Project E admits that

2   Gap is using cross-stitching decoratively.  Exs. K, L.   Just as the heart cutouts in *Hershy* conveyed a

3   message of love and affection, the cross-stitching on the accused clothing conveys the message of

4   vintage wear.  Rather than serving a source-indicating message, Gap's cross-stitching simply tells the

5   buyer that the clothes they are about to buy are fashionable and trendy.

6           **2.      Gap's Prominent and Consistent Use of its Own Strong Trademarks**

7           **Precludes a Finding that it is Using Xs as Trademarks**

8           In light of Gap's myriad uses of its own trademarks in connection with its garments, Gap's use

9   of cross-stitching cannot possibly serve a trademark function.  *See Car-Freshner Corp. v. S.C. Johnson*

10  *& Son*, 70 F.3d 267, 270 (2d Cir. 1995).  In *Car-Freshner*, the plaintiff accused the defendant of

11  infringing its pine-tree-shape trademark for car fresheners.  In holding that defendant was not using

12  plaintiff's shape as a mark, the Second Circuit stressed defendant's prominent use of its own

13  trademarks: "There is no indication that Johnson uses its tree shape as a mark. Its pine-tree-shaped air

14  fresheners come in boxes prominently bearing the 'Glade Plug-Ins' trademark as well as Johnson's

15  corporate logo. Each unit has 'Glade' imprinted across the front of the product itself."  *Id.*  On these

16  and grounds similar to those in *Hershy*, the court ultimately held that defendant had a valid fair use

17  defense.  *Id*.

18          As soon as a consumer enters a Gap-owned store, he or she is inundated with Gap logos.  On

19  storefronts, signs, walls, and shopping bags, there is no mistaking one's location when one is within a

20  Gap-owned store.  Similarly, Gap garments are affixed with hang tags, labels, and logos specifically

21  designed and oriented so that consumers can identify the source of the goods – e.g. Gap.  Ex. E at 6-8.

22  Most notably, the accused garments themselves are prominently marked with Gap trademarks in the

23  form of neck and hang tags.  *Id.*, Ex. I.  As in *Car-Freshner*, this extensive use of Gap's own marks

24  belies the notion of cross-stitching as trademarks.

25

26

27

28

1  **V.    CONCLUSION**

2    For all of the reasons set forth above Gap  is entitled to summary judgment limiting Plaintiff's

3  trademark rights, if any, to two side-by-side cross-stitched Xs in the left breast area and a ruling of

4  non-infringement as to Gap's fair use of cross-stitched Xs.

5

6  Dated: November 21, 2007                    HOWREY LLP

7                                             By:  /s/ Robert N. Phillips

8                                             Robert N. Phillips
                                              Lisa S. Buccino

9                                             Attorneys for Defendants
10                                            THE GAP, INC. and OLD NAVY, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28